Common Pleas Court of Cuyahoga County.

ANGELA CATHERINE DAVEY, ET AL. V.
THOMAS CLIMO, ET AL.

Decided June 20, 1933.

*Squire, Sanders & Dempsey, Harry Crawford, John Barkley, Henry Crawford* and *Atlee Pomerene*, for plaintiffs in error.

*McKeehan, Merrick, Arter & Stewart, Walter Merrick, Thompson, Hine & Flory, J. Frank Pease, Carl E. Basler, Julian H. Weiss, Ellsworth Jordan,* and *Robert M. Morgan,* for defendants in error.

FREDERICK P. WALTHER, J.

The plaintiffs in error seek to reverse the judgment of the Probate Court.

William Davey, Jr., died while a resident of Cuyahoga county, Ohio, on January 18, 1932, leaving a last will and testament dated July 20, 1922, which was admitted to probate in the Cuyahoga county Probate Court on February 9, 1932. Item I of his will directs the payment of his debts and funeral expenses. Item II contains the following language:

"All the residue of my estate of every kind and description and wherever situate of which I die seized or entitled or over which I have the right of testamentary disposition, shall be distributed to the persons entitled thereto under the laws of descent and distribution of the state of Ohio in effect at the time of my decease."

The Guardian Savings & Trust Company, now the Guard-

ian Trust Company, is named as executor in Item III, and in Item IV the testator revokes any and all prior wills. The Guardian Trust Company is the duly appointed, qualified and acting executor of the decedent's estate. At the time of his decease the decedent, never having been married, of course, left no widow nor any children. His father and mother predeceased him, and he never had any brothers or sisters, and at the time of his death six out of seven of his uncles and aunts on the maternal side had predeceased him and his only uncle on his paternal side had predeceased him. All four of his grandparents, to-wit, the two on the maternal side and the two on the paternal side, had also predeceased the decedent. The uncle on the maternal side of the decedent who was and is still living is Thomas Climo. With the exception of the aforesaid Uncle Thomas Climo the six deceased uncles and aunts on the maternal side died leaving issue, and the one deceased uncle on the paternal side died leaving issue, and the question in this case is whether or not the estate of the decedent shall be divided equally between the descendants of the paternal grandfather and grandmother on the one hand and the descendants of the maternal grandfather and grandmother on the other.

The Probate Court held that the estate should be divided into eight equal parts and that the same should be divided seven-eighths to the descendants of the maternal grandparents and one-eighth to the descendants of the paternal grandparents. And it is to this order that the plaintiffs in error prosecute error, the claim of the plaintiffs in error being that one-half of the decedent's estate should be distributed to the descendants of the grandparents on the paternal side and one-half to the descendants of the grandparents on the maternal side.

The decedent having died subsequently to January 1, 1932, to-wit, January 18, 1932, the determination of this question depends entirely upon the interpretation to be given the so-called new Probate Code of Ohio which became effective on January 1, 1932.

The Probate Code of Ohio which was in effect at the time of the death of the decedent contained the following provisions:

Section 10503-4, General Code:

"Statute of descent and distribution. When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:

"1. If there be no surviving spouse, to the children of such intestate or their lineal descendants, *per stirpes*.

"2. If there be a spouse and one child, or its lineal descendants, surviving, one-half to the surviving spouse and one-half to such child or its lineal descendants, *per stirpes*.

"3. If there be a spouse and more than one child, or their lineal descendants, surviving, one-third to the surviving spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, *per stirpes*.

"4. If there be no children, or their lineal descendants, three-fourths to the surviving spouse and one-fourth to the parents of the intestate equally, or to the surviving parent; if there be no parents, then the whole to the surviving spouse.

"5. If there be no spouse and no children, or their lineal descendants, to the parents of such intestate equally, or the survivor of such parents.

"6. If there be no spouse, no children or their lineal descendants, and no parent surviving, to the brothers and sisters, whether of the whole or of the half blood of the intestate, or their lineal descendants, *per stirpes*.

"7. If there be no such brothers or sisters or their lineal descendants, the property in the estate shall pass to the grandparents of the intestate equally, or to the survivor or survivors of such grandparents.

"8. If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents, *per stirpes*; if none, then to the next of kin of the intestate, *per stirpes*. There shall be no representation among next of kin.

"9. If there be no next of kin, to stepchildren or their lineal descendants, *per stirpes*.

"10. If there be no stepchildren or their lineal descendants, escheat to the state of Ohio."

Section 10503-6:

"Estate to descend to children of intestate only, when. When a person dies intestate leaving children, and none of the children of such intestate have died leaving children or their lineal descendants, such estate shall descend to the

children of such intestate, living at the time of his or her death, in equal proportions."

Section 10503-7: ·

"Descent when all descendants of equal degree of consanguinity. When all the descendants of an intestate, in a direct line of descent, are on an equal degree of consanguinity to the intestate, whether children, grandchildren or great-grandchildren, or of a more remote degree of consanguinity to such intestate the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be."

Section 10503-8:    ·

"Descent when both children and heirs of deceased children living. If some of the children of such intestate are living, and others are dead, the estate shall descend to the children who are living, and to the lineal descendants of such as are dead, so that each child of the intestate who is living will inherit the share to which he or she would have been entitled if all the children of the intestate were living, and the lineal descendants of the deceased child or children of the intestate inherit equal parts of that portion of the estate to which such deceased child or children would be entitled if such deceased child or children were living."

Section 10503-9:

"Extent of application of last section. The provisions of the next preceding section shall apply in all cases in which the descendants of the intestate, entitled to share in the estate, are of unequal degree of consanguinity to the intestate, so that those who are of the nearest degree of consanguinity, will take the share to which he or she would have been entitled, had all the descendants in the same degree of consanguinity with him or her, who died leaving issue, been living."

Section 10503-10:

"Sections apply to real and personal property. The provisions of the next four preceding sections shall apply, both to personal and real estate."

The question in this case requires that the language of Section 10503-4, sub-section 8, be interpreted, and it also requires that the court determine whether Section 10503-9,

is inconsistent with or repugnant to Section 10503-4, sub-section 8.

All of the aforementioned sections of the General Code were enacted into the law of the state of Ohio as one Act, and Section 10503-9, appears later in the Act than does Section 10503-4, sub-section 8. Several rules of construction of statutes passed by the legislature must be borne in mind among which are, first the meaning of the words used in their usual sense is to be followed if that can be done; second, if that meaning cannot be ascertained from the words used the intention of the legislature should be sought; third, special provisions control general provisions; and fourth, where one section is inconsistent with another section the latter section should govern, notwithstanding the act was passed in its entirety. This last rule of construction has been somewhat modified by the Supreme Court of Ohio in *State ex rel Attorney General* v. *Mulhern*, 74 O. S., 363, where in the second syllabus the Supreme Court of Ohio has said:

"Where such conflicting provisions are irreconcilable, the court may, if the subject matter is of minor interest, hold the whole act to be inoperative. But where the matter is of vital interest, the court will seek such construction as will make the act enforceable, and in doing so will be governed by the apparent purpose and obvious policy and intent of the general assembly, as gathered from the whole act, even though it results in a disregard of the latter provision."

In this case on page 371 the court quotes with approval *K. P. Railway Company* v. *Commissioners*, 16 Kas. 587, as follows:

"Where there is no way of reconciling conflicting clauses of a statute, and nothing to indicate which the legislature regarded as of paramount importance, force should be given to those clauses which would make the statute in harmony with the other legislation on the same subject, and which would tend most completely to secure the rights of all persons and parties affected by such legislation."

On page 372 the Supreme Court says:

"From this view, and upon principle, we reach the conclusion that there is no hard and fast rule which requires the court to give controlling effect to one provision of an act simply and only because it is found later than other

provisions bearing upon the same subject; that the rule giving the later clause controlling effect is purely arbitrary, springing rather from the necessity of some rule in peculiar cases than upon any sound reason, and is not to be applied to the defeat of the manifest purpose of the law makers where that purpose can be gathered from the context."

Counsel on both sides have very ably presented their respective sides of the case both in argument and in rather exhaustive briefs and have cited many authorities which seem to sustain the claims contended for by them.

The authorities cited in support of the claims by defendants in error with respect to the effect of Section 10503-9, would be controlling unless Section 10503-4, sub-section 8, be inconsistent with Section 10503-9.

Upon a careful study of the present Probate Code and a careful study of the former Probate Code, we find that Section 10503-4, sub-section 8, is a new section. Section 10503-4, sub-section 8, reads:

"If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents, *per stirpes.*"

No similar provision is found in the former Probate Code and the court is therefore of the opinion that if the effect of Section 10503-4, sub-section 8, be different than the provisions of Section 10503-9, then the provisions of Section 10503-4, sub-section 8, must control, said sub-section 8 being inserted specially in the new Probate Code, and not being found in the old Probate Code, and the language of Section 10503-9 having been in the old Probate Code and also being in the new Probate Code. Whether the legislature was cognizant of the fact that it was inserting an entirely new provision is something upon which we cannot speculate, except that we must presume that the legislature intended to do that which it did do, and that by enacting Section 10503-4, sub-section 8, this being a special provision as distinguished from the general provisions in Section 10503-9, the legislature intended Section 10503-4, sub-section 8, to govern in a case where its provisions were applicable.

In the oral argument and in the briefs submitted coun-

sel for plaintiffs in error and defendants in error do not agree as to whether the rule laid down in the English case of *Gibson* v. *Fisher,* L. R. 5, Eq., 51, decided by the Master of the Rolls, or whether the case of *Robinson* v. *Shepherd,* 32 Bevan's Reports, decided by the Lord Chancellor, 665 4 De. G., J. S., 192 is better authority. It happens that the court is not called upon to determine which of these two cases is to be regarded more favorably for the reason that the Ohio Statute above referred to, to-wit, Section 10503-4, sub-section 8, lays down the rule. As a matter of fact the case law under Section 10503-9 does not control for the reason just stated. The court has studied the authorities cited by counsel, and does not deem it necessary that the same be reviewed in this opinion because, as above stated, since we hold that Section 10503-4, sub-section 8, being a new and special enactment, its provisions control over Section 10503-9 and the cases decided under said latter section.

The question that the court is therefore called upon to determine is whether in Section 10503-4, sub-section 8, the *stirps* are to be found in the grandparents or in the immediate descendants, to-wit, the children of the grandparents. If the grandparents are the root or the stock or *stirps* then the plaintiffs in error must prevail. If the children or the first generation from the grandparents are the root or the stocks or the *stirps* then the defendants in error must prevail.

Upon a very thorough and careful consideration of Section 10503-4, sub-section 8, which is in the following language:

"If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents, *per stirpes.*"

the court is unable to escape the conclusion that when the legislature used the words "grandparent or grandparents" it identified and intended such grandparent or grandparents to be the root or stock. There does not seem to be any other good reason why the legislature used these words. If the uncles and aunts were to be the roots then the legislature should have used different language, and if it intended the uncles and aunts to be the roots, it should have

said, in addition to that which it did say,—"Or to the uncles and aunts, if any, of such decedent and their lineal descendants *per stirpes*," or it might have adopted language substantially as follows:

"If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents," and to their descendants *"per stirpes."*

It is of course elementary that one cannot be a *stirps* or root or stock and at the same time be a taker, because the phrase *per stirpes* anticipates the decease of the root.

It is claimed that Thomas Climo, the only living uncle, takes directly as one of a class in his own right. The court finds himself unable to agree with this claim. The court does find, however, that the theory on which he is permitted to share in this estate is as an heir to or descendant from his father and mother, to-wit, the maternal grandparents of the decedent. In order to establish his right to inherit, bearing in mind that there is no direct provision allowing uncles and aunts to share, and that his right to share in the estate comes through his father and mother, namely the maternal grandparents of the decedent, we are forced to the conclusion that the maternal grandparents of the decedent are the *stirps* or root or stock, which permits Thomas Climo the living uncle to inherit.

The term *per stirpes* has such a well defined meaning in the law as not to make it necessary to define its meaning. However, it may be well to refer to a definition. In Rawle's Third Revision of Bouvier's Law Dictionary, in Volume 3, at page 3138, we find that *stirpes* is defined as being:

"The root-stem, or stock, of a tree. Figuratively, it signifies in law that person from whom a family is descended and also the kindred or family."

In V Words and Phrases, 935, we find:

*"Per Stirpes* means by or according to stock or root; by right of representation. When descendants take by representation of their parent they are said to take *per stirpes;* that is children take among them the share which their parent would have taken if living."

It is also of significance, in the court's opinion, that the legislature has used the word "lineal" preceding the word "descendants."

V Words and Phrases, 4172, defines "lineal descents" as:

"The term 'lineal descents' is used to designate descents from father to son or grandfather to grandson, etc., as distinguished from 'collateral descents' as from brother to brother, cousin to cousin, etc., *Levy* v. *McCartee,* 31 U. S., (6 Pet.) 102, 112, 8 L. Ed., 334. Also we find 'lineal consanguinity' is the relation which subsists between persons of whom one is descended in a direct line from the other. *McDowell* v. *Addams,* 45 Pa. (9 Wright) 430-432."

Rawle's Third Revision of Bouvier's Law Dictionary Vol. 3, page 2023, defines "lineal" as "being in a direct line. Lineal descent would be as from father or grandfather to son or grandson." *Levy* v. *McCartee,* 31 U. S., (6 Pet.) 112, 8 L. Ed. 334.

The court is of the opinion that in view of the fact that a lineal descendant must be a direct descendant or at least be in a line of descent, the term also implies and anticipates that to be in such line of descent such descendants must be, in part at least, of the same blood of the ancestor.

When the legislature of Ohio provided that the property shall go to the lineal descendants it meant to the lineal descendants of the respective ancestors. This requires that the share going to one set of grandparents remain in the line of these particular grandparents and the share going to the other set of grandparents remain in the line of that line of grandparents.

Therefore, the court being of the opinion that Section 10503-4, sub-section 8, controls over Section 10503-9, and that the *stirps* or roots are to be found in the respective grandparents and not the first generation removed from such grandparents, the judgment of the Probate Court is reversed and descent and distribution is ordered in accordance with this opinion.

So far as the procedure affecting the rights of Frank J. Venning, Lillian Showers Bailey, Mary Elizabeth Violet Koop, and Joseph Ramos, Jr., is concerned, it has been represented to the court that counsel on both sides of the question in which they are particularly interested, have agreed upon a proper journal entry, and the court therefore is not called upon and does not pass upon the question as to the procedure especially concerning them.